Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 CR 871 | DATE | AUG. 30, 2001 |
| CASE TITLE | UNITED STATES OF AMERICA v. BARRY J. WOLF | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Defendant's motion to withdraw guilty plea is denied. By September 7, 2001, each party shall file his/its sentencing memorandum.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| ✓ | Notified counsel by telephone. | SEP 04 2001 date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| CW | courtroom deputy's initials | FILED FOR DOCKETING  01 AUG 30 PM 5:07  Date/time received in central Clerk's Office | date mailed notice  mailing initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA, )
                          )
            Plaintiff,    )
                          )
       v.                 )  No. 00 CR 871
                          )
BARRY J. WOLF,            )
                          )
            Defendant.    )

DOCKETED
SEP 0 4 2001

**MEMORANDUM OPINION AND ORDER**

In October 2000, an indictment was returned charging defendant Barry Wolf with 12 counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 2 and one count of commodities fraud in violation of 7 U.S.C. §§ 6o(1) and 13(a)(2). It is further alleged that more than 175 customers were fraudulently induced to invest approximately $2,100,000 in commodity futures accounts managed by defendant which resulted in losses to the customers of more than $1,500,000. Based on a finding that he was a flight risk, defendant was ordered detained pending trial. That conclusion was supported by findings concerning the defendant's claimed medical ailments.

Although his two attorneys counseled against it, defendant entered into a plea agreement with the government. On



May 17, 2001, defendant pleaded guilty to all thirteen counts of the indictment. Sentencing was initially set for July 11, 2001. On June 27, 2001, sentencing was reset to August 8, 2001. On July 18 and 19, 2001, defendant sent two pro se letters to the court in which he requested that his plea be withdrawn and that he be released pending trial.[1] In the letters, defendant contended that he pleaded guilty because of the pain and fear from his medical condition and in order to hopefully obtain better medical treatment.[2] He contended he was innocent of the charges against him. He also asserted that one of his attorneys provided ineffective assistance of counsel.[3] In a reply filed by counsel, it is additionally argued that leave to withdraw the plea should be granted because the government allegedly has breached a promise not to dispute the amount of the loss claimed

---

[1] Most of the factual assertions in the letters contest the court's findings regarding pretrial detention and do not directly pertain to the grounds for withdrawing the plea.

[2] In its response, the government assumes defendant is contending that the government promised medical treatment during the plea negotiations. Defendant makes no such contention. Instead, he contends that he pleaded guilty with the expectation that he would more quickly be transferred to a permanent correctional facility with better medical facilities.

[3] Defendant was represented by Paul Brayman. On March 14, 2001, based on representations as to the complexity of the case, Ellen Domph was also appointed to represent defendant. After defendant pleaded guilty, defendant sent a letter to the court complaining of Brayman's representation. Brayman thereafter moved to withdraw and that motion was granted on July 11, 2001. The allegations of ineffective assistance of counsel pertain to Brayman, not Domph as well.

to have been cause by defendant's misconduct. The government opposes the motion to withdraw the plea.

> Rule 32(e) of the Federal Rules of Criminal Procedure provides that a defendant may withdraw a guilty plea on a showing of "any fair and just reason." Id. Rule 32(e), however, is not a freeswinging backdoor. Defendants do not have an absolute right to withdraw their guilty plea, United States v. McFarland, 839 F.2d 1239, 1241 (7th Cir. 1988), and after a thorough Rule 11 colloquy, defendants face an uphill battle in demonstrating a fair and just reason. United States v. Schilling, 142 F.3d 388, 398 (7th Cir. 1998); United States v. Messino, 55 F.3d 1241, 1248 (7th Cir. 1995).

United States v. Hodges, ___ F.3d ___, 2001 WL 856495 *4 (7th Cir. July 30, 2001).

> The whole point of the Rule 11 colloquy is to establish that the plea was knowingly and voluntarily made. See United States v. Ellison, 835 F.2d 687, 693 (7th Cir. 1987). Accordingly, "in a Rule 32 proceeding, when the court is asked to reevaluate the defendant's intent at the time of the entry of a plea, that reviewing court's ultimate determination of the defendant's state of mind depends, in large part, on what defendant said during the Rule 11 colloquy." Id. Moreover, the record that is created at a Rule 11 hearing is accorded a "presumption of verity." United States v. Trussel, 961 F.2d 685, 689 (7th Cir. 1992). Thus, a defendant who files a motion to withdraw his plea on the ground that his plea was not knowing and voluntary, contrary to his assertions at the Rule 11 proceeding, faces a heavy burden of persuasion. See Ellison, 835 F.2d at 693. "'The district court is generally justified in discrediting the proffered reasons for the motion to withdraw and holding the defendant to [his] admissions at the Rule 11 hearing.'" United States v. Messino, 55 F.3d 1241, 1248 (7th Cir. 1995) (quoting United States v. Groll, 992 F.2d 755, 758 (7th Cir. 1993)).

United States v. Standiford, 148 F.3d 864, 868-89 (7th Cir. 1998).

Defendant asserts that he is actually innocent of the charges against him, but that he pleaded guilty because of his medical condition. Pages 2 through 9 of the plea agreement contain a detailed statement of the facts supporting defendant's conviction. This statement was negotiated and, at defendant's personal request shortly before the plea colloquy, handwritten changes were made. See May 17, 2001 Tr. at 3 (hereinafter "Tr."). The plea agreement contains an express statement that defendant is pleading guilty "because he is in fact guilty of the charges" contained in the indictment and defendant expressly admits the facts of the offenses that are recited in the plea agreement. Plea Agreement ¶ 5. At the plea colloquy, defendant answered affirmatively that he carefully read the plea agreement, discussed it thoroughly with counsel, and that he was confident that he understood it. Tr. at 8. The factual statement of the plea agreement was read into the record at the plea colloquy and defendant affirmatively responded that it is a "fair and accurate statement of what happened." Tr. at 15-25.

The Seventh Circuit has recognized legal innocence as a fair and just reason to withdraw a guilty plea. Hodges, ___ F.3d at ___, 2001 WL 856495 at *5 (citing United States v. Gomez-Orozco, 188 F.3d 422, 425 (7th Cir. 1999); Groll, 992 F.2d at 758). "But a defendant's bare protestations of innocence--especially after a knowing and voluntary guilty plea in a

thorough Rule 11 colloquy--will not suffice, regardless of how swiftly they are made. The defendant must proffer some credible evidence, Gomez-Orozco, 188 F.3d at 425, and this defendant has offered none. When a defendant makes no more than naked claims of innocence, a court need not allow the defendant to withdraw his guilty plea nor allow the defendant an evidentiary hearing. United States v. Redig, 27 F.3d 277, 280 (7th Cir. 1994)." Hodges, ___ F.3d at ___, 2001 WL 856495 at *5. As to his proclaimed innocence, Wolf has provided only a bare assertion. Therefore, Wolf's asserted innocence is not, by itself, a sufficient basis for withdrawing his plea. Instead, he must adequately support his related claim that his medical condition caused him to plead guilty despite his proclaimed innocence.

At the plea colloquy, defendant was questioned regarding medications.

>     BY THE COURT:
>         Q. What medications are you on, Mr. Wolf?
>         A. Presently, this morning I have taken two Tylenol No. 3s with codeine and 1.5 milligram tablet Kolazigram. I don't believe the medications I took last night are relevant.
>         Q. I'm sorry?
>         A. The medications I took last night aren't relevant.
>         THE DEFENDANT: Correct?
>         MS. DOMPH: Do you want to know in the last 24 hours, Judge?
>     BY THE COURT:
>         Q. Well, actually what I am most interested in, Mr. Wolf, is if you have taken anything that would have any influence at all on your mental-
>         A. No, Your Honor.
>         Q. --abilities or judgment or anything of that nature.

> A. I am perfectly clear in mind and _body_ and sound judgment. I am coherent and competent to make this plea.
> Q. Okay.
> A. Nothing intoxicating.

Tr. 4-5 (emphasis added).

After the plea was accepted and a September 5, 2001 sentencing date set, defendant made a statement regarding the poor medical treatment he claimed to be receiving at the Metropolitan Correctional Center ("MCC") and the possibility of being transferred elsewhere for treatment. Tr. at 26-28. Counsel then intervened to clarify that defendant was requesting an order transferring him to a hospital or a different correctional facility with better medical facilities pending sentencing, and that defendant was also requesting an expedited sentencing date. Tr. 28. The court then set a sentencing date of July 11, 2001, while recognizing the possibility that it might not be possible to complete the presentence investigation by that time.[4] The court left it for the assigned judge[5] to rule on any request for a transfer pending sentencing, though it was unclear whether defendant was still requesting a transfer in light of the July 11 sentencing date. Subsequently, no written motion for a transfer was submitted.

---

[4] The sentencing date was subsequently reset because the investigation could not be completed by July 11.

[5] Judge Moran, who presided over the plea colloquy, was not the judge assigned to the case.

Defendant's medical condition and care has been an issue throughout this case. In ruling on the issue of detention pending trial, defendant's testimony about his medical condition was found largely noncredible. It was found that he was a malingerer who was feigning paralysis. While in detention, defendant complained about the medical care at the MCC and requested a transfer to a different facility. That motion was denied. Minute Order dated March 21, 2001 (Docket Entry 40). Defendant continued to complain of his medical treatment. After receiving a report from doctors at the MCC and defendant's response thereto, defendant's motion for an independent medical evaluation was denied. Minute Order dated April 25, 2001 (Docket Entry 44). Defendant raised noncredible allegations regarding his inability to urinate. Defendant's claim of high blood pressure was substantiated, but the medical care obtained at or through the MCC was adequate.

Defendant's attorney-drafted reply provides medical records in order to support defendant's contentions regarding medical care. With the exception of Exhibits B, I, J, and possibly C (undated), though, these records all predate the court's April 25, 2001 Ruling.[6] Through April 25, 2001, it had already been found that the MCC was providing adequate medical care for defendant. Also, it had been repeatedly found that

---

[6]Some of the entries on Exhibit J are from June 2001 and therefore are not directly relevant to show medical care defendant was receiving up to the date of his plea.

defendant's contentions regarding his medical condition were not fully credible. The additional medical records that are submitted do not raise a substantial question that circumstances so changed between April 25, 2001 and May 17, 2001 that defendant was effectively coerced into pleading guilty in order to obtain necessary medical treatment. Defendant's contentions regarding his medical condition and care, which were raised two months after the plea, do not state a sufficient basis for either granting his motion to withdraw his plea or holding a hearing on the issue. Cf. United States v. Black, 201 F.3d 1296, 1300 (10th Cir. 2000).

Defendant also contends that he is entitled to withdraw his plea because the government has breached a promise that it made.[7] Paragraph 6 of the plea agreement provides: "[f]or purposes of applying the guidelines . . ., the parties agree on the following points . . . ." One of those points is that "[t]he offense level is increased by 12 levels based upon a loss of $2,169,864.55 pursuant to U.S.S.G. § 2F1.1(b)(1)(M)." Plea Agreement ¶ 6(b). Elsewhere in the plea agreement, defendant admits or acknowledges that the $2,196,864.55 represents the amount invested by customers and that approximately $1,922,632.75 is the loss the customers suffered. See ¶¶ 5 (at page 7), 8(a), 18. The plea agreement also includes the following provisions.

---

[7]Since raised for the first time in defendant's attorney-drafted reply, the government has not had the opportunity to respond to this contention.

> [6](i) The defendant and his attorney and the government acknowledge that the above calculations [under the sentencing guidelines] are preliminary in nature and based on facts known to the government at the time of this Agreement. The defendant understands that the Probation Department will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Sentencing Guidelines calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations.
>
> * * *
>
> 15. Defendant understands that the [government] will fully apprise the District Court and the United States Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing.
>
> * * *
>
> 17. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and, subject to the limitations of the sentencing guidelines, may impose the maximum penalties as set forth in paragraph 8 above. The defendant further acknowledges that if the court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

The plea agreement is stated to represent the entire agreement of the parties (introductory section) and defendant expressly acknowledges that no promises or agreements have been made other than those contained in the plea agreement (¶ 20). Defendant also acknowledged this at the plea colloquy. Tr. at 15. There is no express statement in the plea agreement that the government will decline to prosecute any particular charges

or that the government will not supersede the existing indictment. Of course, following defendant's conviction and sentence, the government would be restricted by double jeopardy and any applicable statutes of limitation.

In the government's memorandum to the probation officer, it repeats ¶ 5 of the plea agreement as its official version of the offense, including the amount of customer investments and loss. However, in its victim impact statement, the government states the following:

> At the time the indictment was returned, the government had incomplete loss figures because we had not yet received information from the defendant's last Futures Commission Merchant, Taiyo General. The indictment alleges that the defendant's criminal scheme resulted in losses (including commissions) of approximately $1,922,632.75 to approximately 175 victims. After the indictment was returned, Ms. Mattes of the N.A. calculated additional losses to victims during defendant's affiliation with Taiyo General. Her final calculations reveal a total loss of $2,966,591.30 to a total of 262 victims.
> When the defendant expressed his desire to plead guilty, the government agreed not to supersede the indictment by including the additional loss. In the Plea Agreement, the government agreed to the above guidelines calculations based only upon the allegations of the indictment. Nevertheless, you are free to consider the additional loss amount as relevant conduct pursuant to USCG [sic] § 1B1.3. It should be noted that the Plea Agreement does not bind either the Probation Office or the Court to the guidelines calculation agreed upon by the parties. [Paragraph 6(i) of the plea agreement is quoted in a footnote.]

Defendant points to the government's statement that it agreed not to supersede the indictment and contends that this

- 10 -

also included an implicit agreement not to raise the additional losses as relevant conduct for sentencing purposes. It is unclear whether, in its victim impact statement, the government is simply reciting the history of plea negotiations or it is referring to an agreement that it considers to still be in force.[8] It may be that the government only agreed to postpone a possible superseding indictment pending plea negotiations. The plea agreement indicates the referenced agreement is no longer in force since the plea agreement states that the plea agreement is the parties' entire agreement regarding criminal liability for 00 CR 871 and defendant acknowledged in both the plea agreement and at the plea colloquy that no other agreements exist. But even assuming such a pre-plea agreement exists and is still in force, the government has not violated express terms of that agreement; it has not superseded the indictment.

Defendant's contention, though, is that there is also an implied term of the agreement that the government will not rely on the additional facts as relevant conduct. The parties' subsequent plea agreement, however, expressly provides otherwise. Paragraph 15 provides: "Defendant understands that the [government] will fully apprise the District Court and the United States Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and

---

[8]Defendant provides no independent support for the existence of the agreement, e.g., an affidavit of counsel or defendant. The only statement describing the agreement is that contained in the government's victim impact statement.

related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing." Even if the prior agreement existed and survived the parties entering into the written plea agreement, the express statement of the plea agreement overrides any possible implicit understanding to the contrary. Therefore, there is no possible breach that could support withdrawing the guilty plea.[9]

The last ground defendant raises for withdrawing the plea is ineffective assistance of counsel.[10] In order to withdraw a plea on grounds of ineffective assistance of counsel, defendant "must show that the advice on which his plea was predicated not only was not within the range of competence demanded of attorneys in criminal cases, but also that there is a reasonable probability that but for [counsel's] unprofessional errors, the result would have been different." United States v. Pike, 211 F.2d 385, 390 (7th Cir. 2000).

---

[9] Since there is no possible breach, it is unnecessary to determine whether the prior agreement actually existed and, if so, whether it continued in force after the plea agreement was reached. Additionally, no determination is presently made regarding the appropriate amount of loss to use for guideline purposes.

[10] In the attorney-drafted reply, attorney Domph declined to address this issue on the ground that it potentially represented a conflict of interest since she was co-counsel during at least some of the pertinent time period even if the allegations are directed solely at attorney Brayman. She suggests that another attorney be appointed to represent Wolf on this issue. Since defendant's pro se allegations do not raise a substantial claim, additional counsel will not be appointed.

The government contends the prejudice component cannot be satisfied because counsel recommended that defendant not accept the guilty plea and therefore defendant cannot show that he would not have pleaded guilty but for counsel's incompetent representation. A situation could exist, however, where, although incompetent counsel was unsuccessful at convincing a defendant to reject a plea, there is a reasonable probability that competent counsel would have provided convincing advice that the defendant should reject the plea. Also, a defendant can also be prejudiced by having accepted the particular plea that was offered. See United States v. Woolley, 123 F.3d 627, 635 (7th Cir. 1997); McCleese v. United States, 75 F.3d 1174, 1179 (7th Cir. 1996); United States ex rel. Sams v. Chrans, 2001 WL 340778 *3 (N.D. Ill. April 6, 2001). There may be situations where, although a defendant accepted a plea agreement against the advice of incompetent counsel, there is a reasonable probability that competent counsel would have negotiated a more favorable plea agreement on the defendant's behalf. That would be a different result that satisfies the prejudice component. Additionally, a subjective statement that the defendant would not have accepted a plea offer if not for counsel's advice will not suffice. There must be objective evidence that the defendant would not have pleaded guilty. McCleese, 75 F.3d at 1179; Sams, 2001 WL 340778 at *3; Nelson v. United States, 22 F. Supp. 2d 860, 864 (C.D. Ill. 1998).

Defendant's July 19 letter refers to two possible acts of ineffective assistance. One of them concerns conduct that occurred during the presentence investigation, that is, after the guilty plea, and therefore could not have affected defendant's decision to plead guilty. The other allegation is that defendant had information about ongoing corruption amongst commodity clearing firms, traders, and institutions that he desired to offer to the government in return for a reduced sentence. According to defendant: "I offered this assistance many months ago, however, I do not know if my intentions were ever brought to the Assistant United States Attorney. Mr. Brayman would always say that I, again had no credibility and would not address the issue further." July 19, 2001 Letter at 2.

It may be that Brayman conveyed the information to the government and that it declined the offer because of the government's perception of the information itself or Wolf's credibility. Or it may be that Brayman did not convey the offer, but that the government would have rejected it if made. Either would be a sufficient ground for finding that there was not ineffective assistance of counsel. Taking defendant's allegation at face value, it cannot be known if either is true. However, there is more to consider than just defendant's allegation in the July 19 letter. He affirmatively responded at the plea colloquy that he thoroughly discussed the plea agreement with his counsel. Tr. at 8. When asked about his discussions with counsel, defendant did not raise any contention that counsel failed to

pursue his desired offer of cooperation. Also, by the time defendant is actually sentenced there will have been close to two months since he sent the July 19 letter. Since its receipt of a copy of the letter, if not earlier through counsel, the government has been aware of a possible offer of cooperation. If the government were interested in defendant's cooperation, it has had ample time to negotiate a new agreement. If no new agreement is reached before sentencing, that is strong indication that the government is not presently, and would not previously have been, interested in any plea agreement based on defendant's cooperation.[11] In light of defendant's statement at the plea colloquy indicating he was satisfied with counsel's representation during plea negotiations, the failure to specifically allege that counsel failed to convey the offer of cooperation to the government, and the lack of a specific allegation or any indication that the government would be interested in defendant's cooperation, it is found that defendant does not have a substantial claim of ineffective assistance of counsel. No evidentiary hearing on this issue need be held and defendant will not be permitted to withdraw his plea on this ground.

The motion to withdraw the plea will be denied. As previously scheduled, defendant will be sentenced on

---

[11]Under Fed. R. Crim. P. 35(b), a motion for reduction of sentence based on cooperation could also be made within one year after the imposition of sentence.

September 12, 2001 at 11:30 a.m. By September 7, 2001, each party shall file a sentencing memorandum addressing the following two questions and any other sentencing issues the party may desire to raise: (a) the appropriate loss figure under U.S.S.G. § 2F1.1(b)(1) and appropriate restitution figure, including addressing the issues of whether, for either or both figures, the court should use the figure agreed by the parties in the plea agreement; and (b) whether, in light of the motion to withdraw the guilty plea and all other pertinent facts, defendant should be accorded a two-level reduction for acceptance of responsibility.

IT IS THEREFORE ORDERED that defendant's motion to withdraw guilty plea is denied. By September 7, 2001, each party shall file his/its sentencing memorandum.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: AUGUST 30, 2001